IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:16-CV-182-FL

| | |
|---|---|
| SOVEREIGN GUNS, INC., )<br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE, BUREAU )<br>OF ALCOHOL, TOBACCO, FIREARMS, )<br>AND EXPLOSIVES, )<br>)<br>)<br>Defendant. ) | ORDER |

This matter is before the court on defendant's motion for summary judgment. (DE 13). The motion has been fully briefed. In this posture issues raised are ripe for ruling. For reasons that follow, defendant's motion is denied.

**BACKGROUND**

Plaintiff initiated this action April 18, 2016, seeking review of defendant's decision to revoke plaintiff's federal firearms license. On August 5, 2016, defendant moved for summary judgment on the basis that plaintiff willfully violated the Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 923(g) et seq. and that defendant's decision to revoke plaintiff's license was correct.

In support of its motion, defendant relies upon the administrative record, which consists of a transcript of a fact-finding hearing conducted before defendant's hearing officer November 17, 2015, and exhibits then submitted. (DE 16). The hearing officer permitted both sides to examine and cross-examine witnesses, present documentary evidence, and offer oral argument but did not

require sworn testimony, sequester witnesses, or apply the Federal Rules of Evidence, over plaintiff's objections. Plaintiff mounts a two-prong defense against defendant's motion asserting procedural deficiencies and substantive error. It relies on the same administrative record and, in addition, the affidavit of Kiran Frampton ("Frampton"), plaintiff's sole owner and general manager. (DE 21-3).

A. GCA Licensing Procedures

The GCA establishes a licensing scheme to regulate firearms transactions and delegates to the Attorney General authority to craft regulations specifying the precise mechanisms of compliance. 18 U.S.C. § 922(g)(1)(A). The bulk of regulations promulgated under the GCA pertain to record-keeping and background checks. For example, subject to few exceptions, a dealer must record every firearms transaction on the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473, which requires a firearms transferee to enter biographical information and certify that the transaction is not prohibited by law. 27 C.F.R. § 478.124(c)(1). Further, a firearms dealer must perform a background check for any non-exempt[1] transferee by contacting the National Instant Criminal Background Check ("NICS") database. See 27 C.F.R. § 478.102. If NICS either fails to respond within three business days or sends a response indicating that the transaction is not prohibited, a firearms transaction may proceed. Id.

In addition, a dealer must maintain an acquisition and disposition record ("A&D book") to record every instance in which the dealer acquires or disposes of a firearm. 18 U.S.C. §

---

[1] For example, an exception to the NICS check requirement is available for a transferee who possesses a licence to carry firearms that cannot be obtained except upon successful completion of an NICS check. 27 C.F.R. § 478.102(d); see also, N.C. Gen. Stat. § 14-415.13(b) ("[T]he sheriff shall determine the criminal and background history of an applicant also by conducting a check through the [NICS]" before a license to carry a concealed firearm shall issue"). However, a licensee who transfers a firearm pursuant to this exception must nonetheless "retain a copy of the purchaser's permit or license and attach it to the firearms transaction record." 27 C.F.R. § 478.13.

2

923(g)(1)(A); 27 C.F.R. § 478.125(e). For each transaction, a licensee is required to record in the A&D book the date of transaction, information about the firearm in question, including make, model, serial number, type, and caliber or gauge, and information about the other party to the transaction including the transferee's name and address (if the transferee is not a federal firearms licensee), or the transferee's name and license number (if the transferee is a federal firearms licensee). 27 C.F.R. § 478.125(e). A dealer must update its A&D book on a daily basis, id., and make it available for defendant's inspection upon request. 27 C.F.R. § 478.121(b).

B. GCA Revocation and Review Procedures

Defendant may revoke a license issued under the GCA if a licensee willfully violates any provision of the GCA or associated regulations. 18 U.S.C. § 933(e). Upon request, an aggrieved licensee is entitled to an administrative hearing to review the revocation, 18 U.S.C. § 923(f)(2), at which time, a licensee may submit evidence and arguments for defendant's consideration. 27 C.F.R. § 478.74. After a hearing takes place, defendant must prepare a written decision summarizing the findings of fact and conclusions of law on which the decision rests. 27 C.F.R. § 478.74.

If defendant does not reverse its decision to revoke, the aggrieved licensee may appeal defendant's decision to the district court for the district in which the licensee resides or has its principal place of business. 18 U.S.C. § 923(f)(3). Review in the district court is de novo, and "the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing[.]" Id. If the court determines that defendant's decision to revoke was incorrect, it may take appropriate action to effect defendant's compliance with applicable law. Id.

3

**STATEMENT OF FACTS**

The facts viewed in the light most favorable to plaintiff may be summarized as follows. Plaintiff holds federal firearms license number 1-56-183-01-6J-09035 issued under the GCA as a dealer in firearms other than destructive devices. As a high-volume dealer, plaintiff sells between 7,000 to 10,000 firearms per year. During a 2012 compliance inspection, defendant cited plaintiff with numerous GCA violations including:

- failure to record approximately 180 acquisitions or dispositions of firearms ("A&D violations");

- failure to account for 185 firearms missing from inventory;

- failure to complete or ensure that customers completed forms issued by defendant to record over-the-counter firearms transactions on 38 occasions ("transaction record violations");

- failure to obtain proper identification from customers on 21 occasions;

- failure to obtain required proof of an alien's residence;

- failure to record NICS information on seven occasions ("NICS record violations");

- failure to conduct a required background check ("NICS check violation");

- failure to complete required forms to record a sale of multiple handguns to a single individual on two occasions ("multiple sales record violations"); and

- failure to terminate a transaction upon obtaining reason to believe that purchaser was prohibited from purchasing a firearm.

To avoid revocation of its license, plaintiff submitted a compliance plan to defendant setting forth measures to remedy cited violations. In its compliance plan, plaintiff stated that it "implemented many new policies," including the use of electronic record-keeping software designed to eliminate "mix ups" resulting from "bad hand writing or from copying down the wrong number."

(DE 16 at 131-32). Defendant also required plaintiff to attend a conference in which defendant's agents undertook to ensure that plaintiff understood its duties as a licensee and warned that further violations could be construed as willful conduct resulting in revocation of plaintiff's license.

On December 1, 2014, defendant performed another compliance inspection. Deficiencies cited in 2012 in the areas of A&D violations, transaction record violations, NICS record and check violations, and multiple sales record violations were found to have persisted. Plaintiff also was cited for failure to provide timely and accurately its A&D book to defendant's inspectors within 24 hours of inspection. As a result, defendant served notice of intent to revoke plaintiff's license based on willful violations of the GCA. Plaintiff requested and was allowed hearing on the matter.

Based on evidence presented at hearing, defendant's administrative adjudicator agreed with defendant's investigators that deficiencies in plaintiff's operation persisted. Accordingly, it found that such behavior constituted willful violations of the GCA on the ground that plaintiff was an experienced firearms dealer with knowledge of the GCA's requirements and had been cited previously for similar violations. Upon plaintiff's request, defendant stayed revocation pending judicial review. This action followed.

## COURT'S DISCUSSION

A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material

5

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In deciding a motion for summary judgment, the court construes evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. Id. at 255.

"[A]n administrative record is a duly authenticated record that enjoys a presumption of verity." American Arms Int'l. v. Herbert, 563 F.3d 78, 86 n.12 (4th Cir. 2009) (citations omitted). "In an appeal of agency action, that record, unless somehow contradicted, satisfies the agency's initial burden of demonstrating the absence of any genuine issue of material fact." Id. (citations and internal quotations omitted). "Of course, a district court can consider evidence submitted by the parties outside the administrative record in determining whether summary judgment is appropriate." Id. (citations omitted). Nevertheless, the court is not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." Anderson 477 U.S. at 251 (citations omitted). Therefore, "conclusory statements, without specific evidentiary support," are insufficient to create a genuine issue of material fact. E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 676 (4th Cir. 2011).

B. Analysis

    1. Analysis of Procedural Adequacy

The court first addresses plaintiff's contention that error occurred at hearing when the examiner failed to apply the Federal Rules of Evidence. As set forth above, the Attorney General may not revoke a federal firearms license except after providing to the aggrieved licensee notice, a hearing, and opportunity to present evidence and oral argument. 27 C.F.R. § 478.74. The GCA itself does not require defendant at such hearings to apply the Federal Rules of Evidence, sequester witnesses, or receive sworn witness testimony. Thus, where plaintiff claims entitlement to the foregoing procedural and evidentiary protections, that requirement must rest upon a source of law extrinsic to the GCA. The court looks first to the Federal Rules of Evidence to determine whether hearing under the GCA is covered by the rules.

Federal Rule of Evidence 101(a) states that "[t]hese rules apply to proceedings in United States courts. The specific courts and proceedings to which the rules apply, along with exceptions, are set out in Rule 1101." Fed. R. Evid. 101(a). In turn, Rule 1101 states that "[t]hese rules apply to proceedings before: United States district courts; United States bankruptcy and magistrate judges; United States court of appeals; the United States Court of Federal Claims; and the district courts of Guam, the Virgin Islands, and Northern Mariana Islands." Fed. R. Evid. 1101(a). Additionally, the Rules apply to "civil cases and proceedings, including bankruptcy, admiralty, and maritime cases; criminal cases and proceedings; and contempt proceedings, except those in which the court may act summarily." Fed R. Evid. 1101(b).

Defendant, a bureau of the Department of Justice, does not fit within any of the categories of adjudicators described in Rule 1101(a). Similarly, a revocation hearing under the GCA does not

7

fit within any of the categories of proceedings described in Rule 1101(b). Thus, a plain reading of the text reveals that the Federal Rules of Evidence, by their own terms, do not apply to revocation hearings before defendant's officers. Plaintiff cites no authority to the contrary, and the court is aware of none.

The court next considers plaintiff's claimed entitlement to procedural and evidentiary protections omitted during hearing through the lens of the Due Process Clause. The Fourth Circuit has not addressed in a published opinion the constitutionality of hearing procedures under the GCA; however, courts within the Fourth Circuit have held such procedures constitutional under the Due Process Clause. DiMartino v. Buckles, 129 F.Supp. 2d 824, 832 (D. Md. 2001), aff'd sub nom. DeMartino v. Buckley, 19 Fed. Appx. 114, 115–16 (4th Cir. 2001).

The Due Process Clause of the Fifth Amendment to the Constitution provides that "[n]o person shall . . . . be deprived of life, liberty, or property without due process of law . . ." U.S. Const. Amend. V. Determining the scope of procedural protections guaranteed by the Due Process Clause is a two-step inquiry. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). First, the court determines whether a claimant possesses an interest triggering the Due Process Clause. Id. Second, the court determines what process is due. Id.

Procedural protections guaranteed by the Due Process Clause attach when the government takes action to impair a property interest. Goldberg v. Kelly, 397 U.S. 254, 261–62 (1970). A claim to a government-created benefit rises to the level of a property interest when the recipient can assert "a legitimate claim of entitlement" to the benefit. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). A recipient can assert a legitimate clam of entitlement when the benefit in question is grounded in non-constitutional law, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

8

538 (1985), and awarded or revoked according to "rules . . . that [the holder] may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 600–601 (1972).

Based on the statutory requirements described above, the holder of a federal firearms license possesses a legitimate claim of entitlement. Specifically, defendant may not revoke a federal firearms license unless it determines that a licensee has "willfully" violated the GCA or regulations promulgated thereunder. 18 U.S.C. § 923(e). Therefore, because a federal firearms license constitutes a benefit created by statute, see Loudermill, 470 U.S. at 538, and can be revoked only upon a finding of "willfulness," see Sindermann, 408 U.S. at 600, the holder of a federal firearms license can assert a legitimate claim of entitlement to such license. Roth, 480 U.S. at 577. Accordingly, protections afforded under the Due Process Clause apply to revocation hearings held before defendant's adjudicators. See Goldberg, 397 U.S. at 261–62.

"The fundamental requirement of due process is opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotations omitted). Nonetheless, "[d]ue process is flexible and calls for such procedural protections as the particular situations demands." Id. at 334. To determine the specific requirements of due process, courts apply Matthews balancing, weighing first, an aggrieved party's interest in a disputed benefit; second, the likely increment to adjudicatory accuracy derived from additional or substitute procedures; and, finally, cost to the government that additional or substitute procedures would entail. Id. at 335. The Court did not suggest in Matthews, nor in any other case of which the court is aware, that application of a particular set of evidentiary rules, sequestration of witnesses, or sworn testimony is required of an administrative hearing. See id.

9

Here, where a licensee cannot engage in the business of firearms sales without a license, plaintiff's interest in its license is significant. See Capitol Mortg. Bankers, Inc. v. Cuomo, 222 F.3d 151, 156 (4th Cir. 2000) (describing as "significant" a mortgage company's interest in its license to issue federally insured mortgages). However, plaintiff has not demonstrated that application of the Federal Rules of Evidence, sequestration of witnesses, or sworn testimony would increase the accuracy of administrative hearings under the GCA. Specifically, in proceedings to determine whether a licensee violated the GCA's record-keeping requirements, the basis for a decision to revoke necessarily turns on documentary evidence of a licensee's violations contained in the relevant records. Therefore, the credibility of investigators' testimony, which sequestration and sworn testimony serve primarily to enhance, is not implicated in such proceedings. Further, in light of a licensee's opportunity to present evidence, cross-examine witnesses, and seek de novo judicial review, it is readily apparent that the GCA offers licensees adequate opportunity to demonstrate any deficiencies or inaccuracies the government's evidence. See id. at 156 (holding due process satisfied when the Department of Housing and Urban Development revoked a license to issue federally insured mortgages on the basis of documentary evidence presented at an informal conference in which licensee was not allowed to examine witnesses or review the government's evidence).

Finally, the cost to the government of sequestering witnesses and administering an oath is likely slight, but the cost of applying the Federal Rules of Evidence is great. For example, the use of hearsay in administrative hearings, which the Court expressly upheld as constitutional under the Due Process Clause in other contexts, see Richardson v. Perales, 402 U.S. 389, 402 (1971) (upholding Social Security determinations decided on the basis of hearsay testimony), would be limited under the Federal Rules of Evidence. This limitation would undermine defendant's ability

to conduct proceedings since the GCA does not grant to defendant's officers power to issue subpoena. Therefore, in some circumstances, defendant would be required, but unable, to produce witnesses whose evidence it currently can receive as hearsay. See id.

Applying the Matthews balancing test reveals that administrative decisions rendered under the GCA are not void for lack of process. For the foregoing reasons, plaintiff's claim of error based on deprivation of procedural and evidentiary protections is denied.

2. Analysis of Substantive Correctness of Decision

As set forth above, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued [pursuant to 18 U.S.C. § 923] if the holder of such license has willfully violated any provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA] . . . ." 18 U.S.C. § 923(e) (emphasis added). Willfulness does not require a showing of bad purpose or evil motive. RSM, Inc. v. Herbert, 466 F.3d 316, 321 (4th Cir. 2006). Rather, a violation is willful when a licensee acts with "a disregard of or an indifference to known legal obligations." American Arms Int'l., 563 F.3d at 82. Although "willfulness" does not extend to inadvertent errors or technical mistakes," id. at 85 (internal quotations omitted), "where a licensee receives official warning that his actions violate the GCA and his record of compliance does not change . . . , it is permissible to infer 'willfulness'" Id.

Viewed in the light most favorable to plaintiff, there exists a genuine dispute of fact regarding whether plaintiff's cited violations were willful. For example, during the November 17, 2015, hearing, defendant submitted evidence of 3,114 A&D violations. Nonetheless, the affidavit of Frampton, submitted in support of plaintiff's response to defendant's motion for summary judgment demonstrates a genuine issue of whether such violations were willful. Specifically,

11

Frampton represents to the court that, with respect to the alleged A&D violations, plaintiff, through its employees, duly recorded all required information in its computer system at the proper time. (DE 21-2 at 3) ("All information was present in the computer system"). Frampton further represents that an error in the software code that converts stored records of acquisitions and dispositions into a printed A&D book is entirely to blame for plaintiff's inability to produce adequate records at the December 1, 2014, inspection. (DE 21-2 at 3) ("All information was present in the title and description of the item but didn't export correctly . . ."). Furthermore, Frampton states that he contacted the software vendor who was able to patch plaintiff's record-keeping program and that, with this patch in place, "all required information will now show up on the print out." (DE 21-3 at 3). Viewed in the light most favorable to plaintiff, the foregoing representations demonstrate the existence of a genuine dispute of material fact regarding the A&D violations that form the core of defendant's case. Therefore, if summary judgment is to issue, it must rest upon other undisputed facts.

Aside from the foregoing A&D violations, defendant's final decision to revoke plaintiff's firearms license rests upon findings that plaintiff engaged in NICS record and check violations, transaction record violations, and multiple sales record violations when it 1) transferred a firearm to an unlicensed person on approximately four occasions without conducting a NICS check; 2) failed to record NICS alternative permit information on the ATF Form 4473 on approximately four occasions; 3) transferred a firearm to an unlicensed individual without recording required NICS information on the ATF Form 4473 on approximately twelve occasions; and 4) failed to timely and accurately report that sale or other disposition of two or more pistols or revolvers to an unlicensed person on approximately ten occasions. (DE 1-3). Again, excluding the A&D violations for

12

reasons given, in light of the fact that plaintiff's business engages in approximately 7,000 to 10,000 firearms transactions per year, the existence of such isolated, undisputed record-keeping and background check violations over the course of two years, standing alone, is not enough to demonstrate the absence of a genuine dispute of material fact regarding plaintiff's willfulness. See American Arms Int'l., 563 F.3d at 85 ("To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to 'willful' failures, even when the legal requirement to complete the forms was known . . .") (internal quotations omitted); RSM, Inc. v. Herbert, 466 F.3d at 320 (finding willful violations of the GCA based on increasingly serious failure to comply with the GCA over the course of four inspections revealing, cumulatively, hundreds of A&D violations, transaction record violations, NICS check violations, and missing firearms).

Additionally, in testimony at hearing and in his affidavit, Frampton offers explanations for some of the cited violations described above. Particularly, of the four NICS check and record violations, plaintiff sold one firearm to Frampton himself who was previously exempt from the background check requirement when he operated plaintiff as a sole proprietorship. Plaintiff sold another to a FBI agent who insisted to plaintiff's employee that he was exempt from the background check requirement. According to Frampton's affidavit, plaintiff, in the course of providing repair services, returned a third firearm to its owner, (DE 21-3 at 5), which is a type of disposition that does not require a NICS background check. 27 C.F.R. § 478.124. Regarding the fourth violation, plaintiff admits selling the firearm to an individual who possessed a recently-expired concealed carry license, but contends that this conduct was not a willful violation, but an isolated mistake. Similarly, evidence presented at the November 17, 2015, hearing and Frampton's affidavit indicate that, although plaintiff engaged in twelve NICS record violations, plaintiff, in all but one case, performed

13

the underlying NICS check and received information that would permit plaintiff to transfer the firearm.  Viewed in the light most favorable to plaintiff, the foregoing explanations weigh against a finding of willfulness.   Because plaintiff has demonstrated the existence of a disputed issue of material fact as to the essential element of willfulness, summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is DENIED.  The court LIFTS stay of enforcement of the court's initial order.  The parties are DIRECTED to comply with the initial order entered August 8, 2016, to meet and confer to attempt to agree upon a proposed plan for discovery and remaining deadlines.  The parties shall conduct a Rule 26(f) conference no later than **December 30, 2016.**  The joint report and plan and Rule 26(a)(1) initial disclosures shall be due **14 days** after the Rule 26(f) conference.

SO ORDERED, this the 8th day of December, 2016.

LOUISE W. FLANAGAN
United States District Judge