IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-182-FL

| | | |
|---|---|---|
| SOVEREIGN GUNS, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS, AND EXPLOSIVES, | ) | |
| | ) | |
| Respondent.[1] | ) | |

This matter is before the court on respondent's renewed motion for summary judgment. (DE 36). The motion has been fully briefed, and, in this posture, the issues presented are ripe for ruling. For reasons noted, the motion is granted.

**BACKGROUND**

The full case background is a matter of record. As set forth more fully in prior order, the court denied respondent's motion for summary judgment on the ground that affidavit of Kiran Frampton ("Frampton") dated August 26, 2016, established a genuine dispute of material fact regarding whether petitioner's GCA violations were willful. As pertinent here, the court observed that representations in Frampton's affidavit provided a basis to conclude that numerous errors or omissions in petitioner's acquisition and disposition record ("A&D book") were entirely attributable

---

[1] As respondent notes in footnote one of its memorandum in support of the instant motion, the caption of petitioner's complaint characterizes the parties as "petitioner" and "respondent" rather than "plaintiff" and "defendant," as reflected on the court's docket. The Gun Control Act ("GCA") contemplates this designation. 18 U.S.C. § 923(f)(3) (referring to "petition" for judicial review). The caption is constructively amended so to reflect. The clerk is DIRECTED to amend the docket to bring it in conformity with the caption.

to a computer software error. For ease of reference, the pertinent holding is reproduced here:

> [D]uring the November 17, 2015, hearing, [respondent] submitted evidence of 3,114 A&D violations. Nonetheless, the affidavit of Frampton, submitted in support of plaintiff's response to defendant's motion for summary judgment demonstrates a genuine issue of whether such violations were willful. Specifically, Frampton represents to the court that, with respect to the alleged A&D violations, plaintiff, through its employees, duly recorded all required information in its computer system at the proper time. (DE 21-2 at 3) ("All information was present in the computer system"). Frampton further represents that an error in the software code that converts stored records of acquisitions and dispositions into a printed A&D book is entirely to blame for plaintiff's inability to produce adequate records at the December 1, 2014, inspection. (DE 21-2 at 3) ("All information was present in the title and description of the item but didn't export correctly . . ."). Furthermore, Frampton states that he contacted the software vendor who was able to patch plaintiff's record-keeping program and that, with this patch in place, "all required information will now show up on the print out." (DE 21-3 at 3). Viewed in the light most favorable to plaintiff, the foregoing representations demonstrate the existence of a genuine dispute of material fact regarding the A&D violations that form the core of defendant's case.

(DE 25 at 11–12).

After denial of respondent's motion for summary judgment on the foregoing basis, the court allowed a period of discovery. Thereafter, respondent filed the instant renewed motion for summary judgment, wherein respondent again seeks to demonstrate that there is no genuine dispute that petitioner's violations were willful.

In support of the renewed motion, respondent relies upon earlier-referenced materials, and, in addition, depositions of Kiran Frampton ("Frampton"), Nathalie Day ("Day"), Veronica Bohuczky ("Bohuczky"), Wilton Gleaton ("Gleaton"), Stephen Maley "Maley"); petitioner's responses to requests for admission; a reference guide related to "Merchant Magic" software; and an Excel spreadsheet version of petitioner's acquisition and disposition record ("A&D book"). In opposition, petitioner relies upon the same evidence, and, in addition, deposition of Michael Winters ("Winters"); documentary evidence of certain firearms sales; internal e-mail transmittals exchanged

2

among respondent's agents; and affidavit of Frampton dated January 5, 2018.[2]

## STATEMENT OF FACTS

The court proceeds here to develop further its summary of the undisputed material facts viewed in the light most favorable to petitioner, particularly with respect to petitioner's adoption of computer-based record keeping software.

In May 2010, Frampton, while operating his first brick and mortar firearms store located in Angier, North Carolina, purchased for $1,895.00 a license to use Merchant Magic, which is a point-of-sale or inventory control software produced by Cervelle Software ("Cervelle"). (DE 43 ¶¶ 2–7; DE 44 ¶¶ 2–7). Frampton began using Merchant Magic during 2010 and petitioner continued to use Merchant Magic after incorporation on March 23, 2013. (DE 46 at 1; DE 44 ¶ 139). With the foregoing purchase, Frampton received a quick reference guide that explained Merchant Magic's features, and, on September 22, 2010, Cervelle technicians trained Frampton to use Merchant Magic. (DE 43 ¶¶ 17–18; DE 44 ¶¶ 17–18).

Merchant Magic is designed to generate automatically a GCA compliant A&D book based upon data entered by Merchant Magic users. (Id. ¶¶ 7–9). To use this system, a Merchant Magic user, such as a store cashier, must obtain from every buyer or seller, prior to any non-exempt transaction, identifying information about that buyer or seller and identifying information about the subject firearm, as required under GCA regulations summarized in prior order. (Id. ¶ 9–11).

---

[2] Date under Frampton's signature reads January 5, 2019. (DE 14-11 at 5). The court attributes this obvious typographical error to petitioner's counsel. Ordinarily, minor errors of this nature do not warrant any formal address. However, typographical and grammatical errors in petitioner's filings are so numerous that they impede the court's efforts to assess the merits of petitioner's case. Petitioner's filings exhibit also numerous failures to follow the Local Civil Rules. Other matters before the court involving the Buzzard Law Firm, both pending and previously closed, exhibit similar deficiencies. While the court is not inclined at this juncture to issue any sanctions, petitioner's attorneys are admonished that future filings must adhere to higher standards.

To facilitate this data collection, Merchant Magic presents onscreen a form where users can input the required information. That form appears to the user as follows:[3]



(DE 47-11 at 8).

While Cervelle sells Merchant Magic with certain default settings in place, the user can customize Merchant Magic in various ways, for example, to enable Merchant Magic to track specific categories of firearms defined by the user. (DE 43 ¶ 12; DE 44 ¶ 12 (a user can control what information Merchant Magic collects); DE 44 ¶ 163; DE 54 ¶ 163 (Cervelle sets Merchant Magic's default settings). Additionally, a user can customize Merchant Magic to "enforce" some or all fields

---

[3] The only examples of this form presented to the court are included in petitioner's appendix to its statement of material facts. Handwritten markings and CM/ECF banners are additions for purposes of this litigation.

appearing in the form reproduced above. "Enforcing" a field means that Merchant Magic will prevent the user from submitting a form as complete unless data is entered in every enforced field. (DE 43 ¶¶ 12–13; DE 44 ¶¶ 175–76). If a user fails to enter data into an enforced field, Merchant Magic does not save inputted data but instead prevents submission of the incomplete form and displays dots in a diamond shape adjacent to any enforced field, as may be observed left of the "model," "caliber," and "type" fields in the following example:



(DE 47-11 at 10; ¶ 17 (explaining significance of dots)). After a user enters data in all enforced fields (or if no field is enforced), Merchant Magic will allow a user to submit the data entry form, which saves any inputted data. (DE 43 ¶ 15; DE 44 ¶ 15). If the form is completed simultaneously

5

with every firearms transaction, and if every pertinent field is enforced, Merchant Magic's database necessarily has sufficient data to account for all acquisitions and dispositions that take place within the establishment where Merchant Magic is used.

Merchant Magic's database is not suitable for human inspection in its native format. However, the database can be "exported" as a comma delimited file (a list of information separated by commas), and, from a comma delimited file, Microsoft Excel can create a spreadsheet that is suitable for human inspection. (Id. ¶ 8). The resulting spreadsheet includes on every row acquisition and disposition information pertaining to a discreet firearm, and each column contains a specific category of information such as firearm model, date of acquisition and disposition, and name of seller or purchaser, among other information. (See DE 40-12). In this manner, a user can instruct Merchant Magic to create on demand a spreadsheet that constitutes an A&D book.

Petitioner's experience with Merchant Magic was plagued by a number of problems. As summarized in prior order, respondent's 2012 inspection of petitioner resulted in numerous citations for failure to keep and maintain adequate records. (See DE 25 at 4). At that juncture, the parties did not delve deeply into the root causes of errors observed at inspection, but, at the time, Frampton blamed Merchant Magic for at least some of the cited violations. (See DE 16 at 135 (letter memorializing petitioner's plan to improve compliance following 2012 inspection noting that a dedicated employee would be hired to undertake a triple check of any computerized records)). Following the 2012 inspection, petitioner agreed to implement new policies governing record-keeping software to ensure that such violations did not persist. (See id.).

As pertinent to respondent's 2014 inspection, which is the subject of this case, petitioner's practices involving Merchant Magic, at various points, did not align with default settings established

by Cervelle in a manner that would cause Merchant Magic to produce on demand a GCA compliant A&D book. For example, Merchant Magic's data entry page features a "category" field where a user can specify what category of firearm is involved in a given transaction. (DE 47-11 at 8). Merchant Magic is configured by default to recognize five categories, namely "pistol," "rifle," "revolver," "shotgun," and "other." (DE 44 ¶ 68). Merchant Magic will include a firearm category for a particular entry in the final A&D book only if the user selects one of the foregoing default categories or changes the default settings to cause Merchant Magic to recognize other categories and export such additional category entries to an A&D book. (See id.; DE 40-3 at 34). In some instances, however, petitioner entered other categories such as "semi-auto rifle" and "tactical rimfire guns," without changing Merchant Magic's default settings to recognize or export such entries. (DE 44 ¶ 68). Accordingly, in those instances, the spreadsheet version of petitioner's A&D book shows empty cells where category information should appear. (Id.).

Additionally, a Merchant Magic user may select an option to indicate whether the other party to a firearms transaction is a "customer" or "vendor." (Id. ¶ 146). This default setting contemplates that if the user engages in a firearms transaction with another federal firearms license holder, the user would select the "vendor" option. For a transaction with a "customer," which here refers to anyone who does not possess a federal firearms license, the "customer" option is appropriate. (Id. ¶¶ 145–63).

Regardless of whether the user selects "customer" or "vendor," the Merchant Magic data entry page provides a field that prompts the user to enter a federal firearms license number ("FFL number"). (Id. ¶ 150). If a user selects "vendor," Merchant Magic is set by default to export that FFL number to the A&D book, and it will appear on the final spread sheet in a cell within the

7

column designated for FFL numbers. (See id. ¶ 157). If, however, a user selects "customer," Merchant Magic, by default, does not export an FFL number for that entry, even if the user inputs an FFL number in the space provided. (Id.).

In some instances, petitioner marked transactions with other federal firearms licensees as "customer" transactions. (See id. ¶¶ 145–63). Nonetheless, petitioner always entered any federal firearms licensee's FFL number. (Id.). However, because petitioner selected the "customer" designation for some transactions involving other licensees, certain cells in petitioner's A&D book that should have contained FFL numbers were empty. (Id. ¶ 159).

The foregoing issues caused the bulk of violations that prompted respondent to initiate proceedings to revoke petitioner's federal firearms license.

## DISCUSSION

The court proceeds immediately to its analysis with deference to the standard of review pertinent to a Rule 56 motion stated in prior order.

Under 18 U.S.C. § 923(g)(1)(A), any federal firearms licensee ("licensee") must maintain records of acquisition and disposition of firearms in the manner prescribed by regulation. Under the regulations, a licensee is required to record, for each acquisition of a firearm, acquisition date; name and address or name and federal firearms license number of the person from whom any firearm was acquired; name of any manufacturer and/or importer; and model, serial number, type, and caliber of the subject firearm. 27 C.F.R. § 478.125(e). For each disposition, the licensee must record the date of disposition; name and address or name and federal firearms license number of the transferee, or, under certain circumstances, a firearms transaction record, which may be recorded on "Form 4473." Id. The regulations require a specific format for the A&D book that houses the foregoing

information. id. § 478.125(f)(2), and that A&D book must be available for respondent's inspection on demand. 18 U.S.C. § 922(m).

"The Attorney General may, after notice and opportunity for hearing, revoke any license issued [pursuant to 18 U.S.C. § 923] if the holder of such license has <u>willfully</u> violated any provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA] . . . ." 18 U.S.C. § 923(e) (emphasis added). Willfulness does not require a showing of bad purpose or evil motive. <u>RSM, Inc. v. Herbert</u>, 466 F.3d 316, 321 (4th Cir. 2006). Rather, a violation is willful when a licensee acts with "a disregard of or an indifference to known legal obligations." <u>American Arms Int'l.</u>, 563 F.3d at 82. Although "willfulness" does not extend to inadvertent errors or technical mistakes," <u>id.</u> at 85 (internal quotations omitted), "where a licensee receives official warning that his actions violate the GCA and his record of compliance does not change . . . , it is permissible to infer 'willfulness'" <u>Id.</u> (affirming grant of summary judgment on grounds that the undisputed facts demonstrated that petitioner's GCA violations were willful).

In the instant matter, the undisputed facts establish that petitioner's violations of the GCA were willful. In particular, the 2012 inspection revealed that petitioner failed to implement sufficiently strict procedures to ensure that a GCA compliant A&D book was available on demand, as required. (DE 40-1 at 11). Whatever the details of those earlier failures to operate properly any inventory control software might have been, it is clear that petitioner did not establish sufficient quality control procedures to ensure that the GCA requirements were met. (<u>Id.</u>).

Moreover, respondent gave fair notice that petitioner's approach to firearms records keeping was insufficient under law. (<u>See</u> DE 16 at 133). Respondent warned that repeated failures to maintain proper records would support a finding that further violations are willful and that

9

revocation of petitioner's federal firearms license would follow. (Id. at 135).

Despite these warnings and petitioner's voluntary agreement to improve its practices, it is undisputed that petitioner did not operate Merchant Magic, or any other records keeping system, in a manner that enabled on demand production of an A&D book, as the GCA requires. (DE 43 ¶ 54; DE 44 ¶ 54). While petitioner, through Frampton, marshals numerous excuses for failure to operate Merchant Magic in a manner that would enable it to produce the required A&D book, the reality is that the supposed software errors that petitioner relied upon to defeat respondent's earlier motion for summary judgment were not genuine computer code errors or glitches. Rather, Frampton did not undertake to achieve sufficient familiarity with the workings of Merchant Magic to use it correctly. Moreover, nothing in the record indicates that Frampton ever performed a test of the software by printing out an A&D book for internal review, which would have revealed any problems with Merchant Magic prior to respondent's inspections.

Petitioner's three main examples of problems with Merchant Magic illustrate the nature of these deficiencies. Petitioner argues that because Frampton did not understand that a transaction with another firearms dealer should have been marked as a "vendor" transaction, petitioner should be excused from the consequences of any mistakes of this nature. (See DE 44 ¶ 80 ("Plaintiff's assumption about the ability to use the Customer filed [sic] for FFL holders to whom he sold firearms was reasonable based on the documents[.]"). Similarly, petitioner notes Frampton's failure to understand that any categories other than Merchant Magic's defaults must be defined in order to export to an A&D Book, (id. ¶ 164), and that fields must be "enforced" to ensure corresponding information is collected and saved correctly. (Id. ¶ 176). Petitioner argues that these misunderstandings undermine any finding of willfulness. However, such arguments fail where

petitioner's responsibilities encompass not only a first order duty to ensure that required information is collected and recorded with every firearms transaction, but also a second order duty to establish quality control procedures to detect and rectify any shortcomings in records keeping procedures. See American Arms Intern., 563 F.3d at 87 ([T]his Court [has] underscored 'the need for strict compliance with the [GCA]."). Petitioner failed to discharge the latter duty.

In addition to excuses based upon failures to operate inventory control software correctly, petitioner protests that certain investigators were inexperienced at the time of inspections and exchanged inappropriate emails that disclose contempt for petitioner, its employees, and Frampton. (See DE 47-5). The court agrees that cited emails exchanged among respondent's investigators are entirely inappropriate and unbecoming of any law enforcement officer. Nonetheless, the conduct of respondent's investigators is not at issue in this motion, and petitioner's attempt to change the subject in this regard is not well received. Before the court is a motion for summary judgment grounded in the record of petitioner's GCA compliance. As noted, that record discloses repeat violations. Investigators' internal communications, inappropriate though they were, do not create any genuine issue of material fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).

In sum, the undisputed facts establish that petitioner engaged in repeated GCA violations by its failure to maintain proper records. Petitioner's excuses for such failures are inadequate under law. Accordingly, inference is warranted that such violations were willful. On this basis respondent's renewed motion for summary judgment is granted.

## CONCLUSION

Respondent's renewed motion for summary judgment, (DE 36), is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 24th day of September, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge